# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* K. R. MANNOR, Minor.

UNPUBLISHED
September 12, 2017

Nos. 337115, 338051
Newaygo Circuit Court
Family Division
LC No.   16-008834-NA

Before:  TALBOT, C.J., and O'CONNELL and CAMERON, JJ.

PER CURIAM.

The trial court entered an order terminating the parental rights of respondent-mother, F. Mannor, and respondent-father, J. Mannor, to their minor child, KRM, under MCL 712A.19b(3)(c)(*i*) (the conditions that led to adjudication continue to exist) and (j) (reasonable likelihood that the child will be harmed if returned to the parents).  Both respondents appeal as of right.  We previously consolidated the appeals.[1]  We now affirm.

## I.  FACTUAL BACKGROUND

Petitioner Department of Health and Human Services (DHHS) removed KRM from respondents' care at the hospital after her birth due to concerns regarding domestic violence and parenting skills.  DHHS provided respondents services to address these concerns.  Respondents participated in most services.  However, the trial court found that respondents failed to benefit from services, and that neither respondent had the capacity to properly care for KRM.  Therefore, the trial court found statutory grounds to terminate respondents' parental rights, found that termination was in KRM's best interests, and terminated both respondents' parental rights.

## II.  REASONABLE EFFORTS

Respondent-mother argues that the trial court erred in finding that DHHS made reasonable efforts to reunify her with KRM because DHHS failed to accommodate respondent-mother's disability by allowing her additional time to comply with services.  We disagree.

---

[1] *In re K R Mannor Minor*, unpublished order of the Court of Appeals, entered April 27, 2017 (Docket Nos. 337115, 338051).

-1-

"In general, issues that are raised, addressed, and decided by the trial court are preserved for appeal." *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). The Michigan Supreme Court in *In re Hicks/Brown, Minors*, ___ Mich ___; 893 NW2d 637, 641, 641 n 9 (2017), stated that it is "skeptical" of any "categorical rule" that "objections to a service plan are always untimely if not raised 'either when a service plan is adopted or soon afterward' " because it may not always be apparent that a service plan is insufficient, especially when a parent suffers from intellectual disabilities. Quoting *In re Terry*, 240 Mich App 14, 26; 610 NW2d 563 (2000). Therefore, respondent-mother's request in the trial court for additional time to benefit from services preserved this issue for appeal.

We review for clear error a trial court's finding that DHHS made reasonable efforts to preserve and reunify a family. See *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). A finding is clearly erroneous if we have "a definite and firm conviction that a mistake has been committed." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

Before seeking termination of parental rights, DHHS must make reasonable efforts to reunify the family. *In re Hicks/Brown*, 893 NW2d at 639.[2] Reasonable efforts include services offered by DHHS to facilitate the child's safe return home. See *In re TK*, 306 Mich App at 710-712. However, reunification efforts are not reasonable unless DHHS "modifies its services as reasonably necessary to accommodate a parent's disability" as required under the Americans with Disabilities Act (ADA), 42 USD 12101 *et seq*. *In re Hicks/Brown*, 893 NW2d at 642. Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id*. at 640 (quotations and citation omitted). Accordingly, DHHS "must make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the modifications would fundamentally alter the service provided." *Id*. (quotations, alterations, and citation omitted).

In this case, the trial court did not clearly err when it determined that DHHS made reasonable efforts to reunify mother and daughter. The removal petition stated that respondent-mother previously had a portion of her brain removed and has cognitive limits. DHHS referred respondent-mother for a psychological evaluation with Sandy Terwillegar. Terwillegar confirmed that respondent-mother suffers from an "intellectual disability" that impairs cognitive function, sequential thinking, judgment and decision making, verbal comprehension, and memory. DHHS foster care worker Nicole Klomp testified that DHHS recommended services in response to the psychological evaluation, including individual therapy, couples counseling, Women's Information Service, Inc., Parents as Teachers, parenting classes, and CPR classes. The trial court found that respondent-mother was offered additional services, including a parental capacity assessment, parenting time, hands-on guidance, demonstrations, anger management, Alternatives to Violence, foster care case management, court intervention, domestic violence services, Early-On services, physical therapy, Women, Infants, and Children, Maternal Infant

---

[2] Some exceptions exist, see MCL 712A.19a(2), but none apply here.

Health, True North housing services, medical/dental services, Medicaid, family team meetings, and Infant Mental Health.

The only specific accommodation respondent-mother seeks on appeal is additional time to comply with services. For example, respondent-mother suggested that her difficulty reading KRM's cues could be rectified with additional time. Klomp testified that DHHS offered respondent-mother services to assist her with learning KRM's cues. The trial court concluded that, due to incapacity, respondent-mother would be unable to adequately care for KRM regardless of the time and services offered. Therefore, the services DHHS offered accounted for respondent-mother's disability, and we are not left with a definite and firm conviction that the trial court erred when it found that DHHS made reasonable efforts to reunify respondent-mother and KRM, but those efforts were ultimately unsuccessful.

## III. STATUTORY GROUNDS

Respondents both argue that the trial court erred in finding statutory grounds for termination. We disagree.

"A parent's right to control the custody and care of [his or] her children is not absolute." *In re Sanders*, 495 Mich 394, 409; 852 NW2d 524 (2014). "[T]he state has a legitimate interest in protecting the moral, emotional, mental, and physical welfare of the minor and in some circumstances neglectful parents may be separated from their children." *Id*. at 409-410 (quotations and citations omitted). The juvenile code, MCL 712A.1 *et seq*., outlines a procedure that can be used to terminate parental rights. Under this procedure, the petitioner must prove by clear and convincing evidence that there is at least one statutory ground under MCL 712A.19b(3) to terminate parental rights. We review the trial court's statutory grounds determinations for clear error. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).

The trial court clearly erred in terminating respondents' parental rights pursuant to MCL 712A.19b(3)(c)(*i*). To terminate parental rights pursuant to MCL 712A.19b(3)(c)(*i*), the trial court must find clear and convincing evidence that "182 or more days have elapsed since the issuance of an initial dispositional order." However, the trial court entered the initial dispositional order on October 5, 2016, and the termination hearing started on January 6, 2017, only 93 days later.[3] Because 182 days had not elapsed since the issuance of an initial disposition order, we have a definite and firm conviction that the trial court made a mistake when it terminated respondents' parental rights pursuant to MCL 712A.19b(3)(c)(*i*).

However, the trial court only needed to find clear and convincing evidence of one statutory ground to support termination, and it did not clearly err in finding statutory grounds to terminate respondents' parental rights pursuant to MCL 712A.19b(3)(j). A trial court may terminate a respondent's parental rights under MCL 712A.19b(3)(j) if it finds by clear and convincing evidence that "[t]here is a reasonable likelihood, based on the conduct or capacity of

---

[3] We are not bound by respondent-father's concession on appeal that the time elapsed exceeded 182 days. See *Camaj v SS Kresge Co*, 426 Mich 281, 290 n 6; 393 NW2d 875 (1986).

the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Evidence that a parent had a history of failing to protect a child from physical abuse supports termination pursuant to subsection (j). *In re Archer*, 277 Mich App 71, 75-76; 744 NW2d 1 (2007). A parent's difficulty managing his or her own emotional state, *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012), or own mental illness, *In re Utrera*, 281 Mich App 1, 24-26; 761 NW2d 253 (2008), thereby harming a child, can support termination. Additionally, a parent's failure to benefit from his or her service plan can be evidence that the child will be harmed if returned to the parent's home. *In re White*, 303 Mich App 701, 712-713; 846 NW2d 61 (2014).

In this case, the trial court concluded that respondents lacked the capacity to care for KRM, which could not be changed through education, counseling, or the support of government programs. Evidence presented at the termination hearing supports the trial court's conclusions. Klomp and Dr. Byron Barnes testified that both respondents struggled to read KRM's cues, such as determining when she was hungry, when she needed changing, or how to soothe her. Terwillegar concluded that a child would be at risk of harm if placed in either respondents' care. Terwillegar explained that respondent-father had difficulty caring for himself and had a history of "blacking out," going into rages, and becoming assaultive. She also explained that respondent-mother's significant memory deficit, comprehension issues, continuing anger issues, presentation as "child-like," and difficulty with verbal comprehension, would place KRM at a risk of harm if placed in respondent-mother's care. Klomp testified that respondents failed to acknowledge, take responsibility for, or rectify the domestic violence in their home. For example, respondent-mother continued to state that domestic violence during her pregnancy was not dangerous to KRM because respondent-father only hit respondent-mother from the chest up. Finally, respondents lacked adequate housing. Respondents lived with family members who were on the Child Abuse and Neglect Central Registry, and respondents failed to use a suggested service to secure alternate housing. Respondents argue that the trial court erred in finding the testimony of Terwillegar and Dr. Barnes to be more credible than witnesses who worked directly with respondents. However, we defer to the trial court's credibility determinations. See *id*. at 711. Therefore, we do not have a definite and firm conviction that the trial court erred when it found statutory grounds to terminate respondents' parental rights.

## IV. BEST INTERESTS

Next, respondent-mother argues that the trial court clearly erred in finding that termination was in the KRM's best interests. We disagree.

After a trial court finds statutory grounds for termination of parental rights, it must determine whether termination is in the child's best interests. MCL 712A.19b(5). The trial court should focus on the child, *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013), weigh all available evidence, and consider many factors, *In re White*, 303 Mich App at 713-714. Factors include "the child's bond to the parent," "the parent's parenting ability," "the child's need for permanency, stability, and finality," *In re Olive/Metts*, 297 Mich App at 41-42, the likelihood that "the child could be returned to [the parent's] home within the foreseeable future," *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012), and "the possibility of adoption," *In re White*, 303 Mich App at 714. If the trial court determines that termination is in the child's best interests by a preponderance of the evidence, it must terminate respondent's parental rights. *In*

*re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016). We review the trial court's determination for clear error. *Id*.

The trial court did not clearly err in determining that termination of respondent-mother's parental rights was in KRM's best interests. The trial court focused on KRM's best interests and noted that the witnesses who testified in favor of termination focused on KRM. Dr. Barnes testified that respondent-mother had difficulty soothing and interacting with KRM. Dr. Barnes and Klomp testified that respondent-mother had difficulty reading KRM's cues. Accordingly, the trial court found that "bonding [wa]s a complete failure." Respondent-mother's cognitive disability made it difficult for her to learn how to parent. Klomp stated that respondent-mother had not rectified the domestic violence issues in her home. Klomp testified that respondent-mother did not benefit enough from services to ensure KRM's safety in her custody. Terwillegar concluded that a child would be at serious risk of harm if placed in respondent-mother's care. Therefore, the trial court stated that it could not conceive of respondent-mother raising KRM, even with help and support. Finally, the trial court found that KRM was young, was adoptable, and needed permanency and stability. Thus, we do not have a definite and firm conviction that the trial court made a mistake when it determined that termination of respondent-mother's parental rights was in KRM's best interests.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, respondent-mother argues that her trial counsel was ineffective. We disagree.

We apply criminal law principles to claims of ineffective assistance of counsel in a termination of parental rights case. *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016). First, respondent-mother must prove that her "counsel's performance was deficient," meaning that it "f[ell] below an objective standard of reasonableness." *Id*. We presume "counsel's performance constituted sound trial strategy." *Id*. at 87. Respondent-mother had the burden to prove otherwise. *Id*. Second, respondent-mother must prove that her counsel's deficient performance prejudiced her. *Id*. at 85. We review a trial court's factual findings for clear error and constitutional determinations novo. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). However, because respondent-mother failed to move for a new trial or an evidentiary hearing, our review is limited to errors apparent on the record. *Id*.

None of respondent-mother's ineffective assistance of counsel arguments have merit.

Respondent-mother argues that she received ineffective assistance of counsel because she was unable to communicate with her initial, appointed attorney. However, respondent-mother requested that her original attorney be replaced due to these communication problems, and the trial court granted her request. Next, respondent-mother argues that she received ineffective assistance of counsel because different attorneys represented her during the case. However, respondent-mother requested a counsel change, and she failed to show on appeal how her successful request for substitute counsel resulted in deficient performance or prejudice.

Respondent-mother also argues that her trial counsel was ineffective for failing to seek ADA services and accommodations. The only accommodation respondent-mother seeks on appeal is additional time to complete services. However, trial counsel did ask for additional time

on respondent-mother's behalf. Therefore, respondent-mother has not shown that trial counsel was deficient. Further, the trial court determined that respondent-mother would be incapable of caring for KRM, regardless of the services offered or time allowed to complete services. Therefore, respondent-mother has not established that she was prejudiced by her trial counsel's failure to seek additional accommodations under the ADA.

Finally, respondent-mother argues that she received ineffective assistance of counsel because her trial counsel failed to question witness Jennifer James-Witteveen regarding respondent-mother's goals and progress in counseling. Further, respondent-mother argues that her counsel should have called her and her mother, Mala Shelper-Schmidt, as witnesses. However, "[d]ecisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy . . . ." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Further, respondent-mother failed to cite any evidence in the record showing what additional testimony these witnesses could have offered, meaning that respondent-mother cannot show that she was prejudiced by the failure to call and question these witnesses.

We affirm.

/s/ Michael J. Talbot
/s/ Peter D. O'Connell
/s/ Thomas C. Cameron

-6-